**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **GOVERNMENT ACCOUNTABILITY PROJECT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Case No. 08-1295 (RJL)** |
| **v.** | ) | |
| | ) | |
| **U.S. DEPARTMENT OF STATE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**
(March 29, 2010) [#15 and #21]

Plaintiff, Government Accountability Project ("GAP"), brings this action against the U.S. Department of State (the "State Department" or "defendant"), for failing to disclose, in whole or in part, certain documents pursuant to a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Before the Court is the defendant's Motion for Summary Judgment and the plaintiff's Cross-Motion for Summary Judgment. Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the defendant's motion is GRANTED and the plaintiff's cross-motion is DENIED.

**BACKGROUND**

On May 21, 2007, GAP made a FOIA request to the State Department's Office of Information Programs and Services for:  (1) all correspondence from January 1, 2005, to the present regarding the Foundation for the Future; (2) all correspondence with the World Bank between Elizabeth Cheney and J. Scott Carpenter regarding the Middle East

Partnership Initiative; and (3) all memoranda, talking points, policy papers, position

papers, and background points regarding the Foundation for the Future.  Compl. ¶ 6;

Def.'s Mot. for Summ. J. ("Def.'s Mot.") Attach. 2, Decl. of Celeste Houser-Jackson

("Houser-Jackson Decl."), ¶ 4 & Ex. 1.  The Foundation for the Future (the "FF") is a

non-profit organization established in July 2006 that provides opportunities through grant

administration for non-governmental organizations and activists working to support

democracy, good governance, human rights, and reform in the Broader Middle East and

North Africa region.  Houser-Jackson Decl. ¶ 21.  The State Department provides funding

to the FF and also contracted with the Eurasia Foundation to provide start-up support for

the FF.  *Id.* ¶ 22.  The Office of the Middle East Partnership Initiative within the Bureau

of Near Eastern Affairs at the State Department ("NEA/PI") managed the State

Department's relationship with the Eurasia Foundation, along with working with the FF

during the start-up phase.  *Id.*

In response to the plaintiff's FOIA requests, the State Department conducted

multiple comprehensive searches, resulting in 306 responsive documents.  *See id.*

¶¶ 11–19.  Of these documents, the defendant released 168 documents in full, released

eighty-five in part, and withheld fifty-three documents in full.  *Id.* ¶ 19.  On July 28, 2008,

the plaintiff filed this action to compel the defendant to produce certain specified

documents of those that the defendant withheld in part or in full.  Compl. ¶ 15; *see also*

Def.'s Mot. Ex. A (listing the contested documents).

2

## ANALYSIS

The parties have filed cross-motions for summary judgment. Summary judgment shall be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). In a FOIA case, the agency bears the burden of establishing that the search was adequate and that each responsive document was either produced, unidentifiable, or exempt from production. *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485, 1489 (D.C. Cir. 1984). In this case, GAP does not contest the adequacy of the State Department's search for responsive documents; GAP does, however, dispute the State Department's reliance on certain enumerated exemptions.

The Court's review of an agency's justification for non-disclosure is *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). In doing so, the Court "may rely on affidavits or declarations submitted by the agency, if those documents describe 'the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Suzhou Yuanda Enter., Co. v. U.S. Customs & Border Prot.*, 404 F. Supp. 2d 9, 12 (D.D.C. 2005) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Here, the State Department submitted two detailed declarations, one by Celeste Houser-Jackson and the other by

3

Steve A. Lauderdale.  Both describe the searches performed and the exemptions invoked

for the documents that were withheld in whole or in part pursuant to Exemptions 1, 4, 5,

and 6.  *See* Houser-Jackson Decl.; Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Pl.'s Cross-

Mot.") Attach. 1, Decl. of Steve A. Lauderdale ("Lauderdale Decl.").  For the following

reasons, the Court finds there are no genuine issues of material fact as to the validity of

each exemption invoked in this case.

1.    **Exemption 1**

Exemption 1 of the FOIA exempts from mandatory disclosure records "that are

(A) specifically authorized under criteria established by an Executive order to be kept

secret in the interest of national defense or foreign policy and (B) are in fact properly

classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  "[C]ourts must

'recognize that the Executive departments responsible for national defense and foreign

policy matters have unique insights into what adverse affects [sic] might occur as a result

of public disclosure of a particular classified record.'"  *Salisbury v. United States*, 690

F.2d 966, 970 (D.C. Cir. 1982) (quoting S. Rep. No. 93-1200 at 12 (1974)).  Thus, while

this Court's review is *de novo*, Congress has indicated that courts should give "substantial

weight" to agency statements concerning the decisions that withhold information on the

basis of Exemption 1.  *See Larson v. U.S. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir.

2009); *Halperin v. CIA*, 629 F.2d 144, 147-48 (D.C. Cir. 1980).  Accordingly, "[i]f an

agency's statements supporting exemption contain reasonable specificity of detail as to

demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson*, 565 F.3d at 865.

In this case, the State Department withheld telegrams in part and in full from various U.S. Embassies conveying the views of foreign government officials, both on the FF exclusively and on a range of regional issues of which the FF was only one and often non-segregable. *See* Houser-Jackson Decl. ¶¶ 50, 78–80, 87, 89, 90, 116. The telegrams include information obtained in confidence during the course of the conduct of U.S. foreign relations. *See id.* ¶¶ 57, 79, 85, 97, 119. For each of these documents, the Court finds that the Houser-Jackson declaration contains reasonable specificity of detail that demonstrates that each document was appropriately withheld in part or in full under Exemption 1.[1] *See id.* ¶¶ 24–30, 57, 79, 85, 97, 119.

First, the Houser-Jackson declaration states that these documents were reviewed in accordance with Executive Order 12958, as amended by Executive Order 13292, and the withheld portions were properly classified under § 1.4(b) (foreign government information) and § 1.4(d) (foreign relations or foreign activities of the United States, including confidential sources) of the Executive Order. *See id.* ¶¶ 26–30. Second, the

---

[1]    The identities of sources in document E135 were withheld under Exemption 6. *See* Houser-Jackson Decl. ¶ 97. The plaintiff does not appear to be contesting the nondisclosure of this information in E135. *See* Pl.'s Cross-Mot. 27–30.

declaration makes clear that the original classification authority in the State Department determined that disclosure of the withheld information could reasonably be expected to cause damage to national security and describes such damage. *See id.* ¶¶ 24–30; *see also* Exec. Order No. 13,292, 68 Fed. Reg. 15,315 (Mar. 25, 2003) (*revoked by* Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) (text of § 1.4 largely unchanged)).  More specifically, the State Department explained that an "essential understanding that governs all diplomatic intercourse . . . is that confidentiality will be observed." Houser-Jackson Decl. ¶ 27.  "Given the sensitive and often charged politics of the Middle East, the nature and extent of cooperation with the U.S. is frequently a subject that foreign governments want and expect to be treated confidentially." *Id.* ¶ 29.  In fact, disclosure of the information in question would cause foreign governments to become less willing in the future to furnish information important to the conduct of U.S. foreign relations, which would harm these relations and inhibit future cooperation and information sharing, causing damage to national security. *Id.* ¶¶ 27–30.

In light of the foregoing, I find that the State Department has demonstrated that disclosure of this information is reasonably expected to cause damage to national security and has adequately described such damage. *See Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993) (recognizing the State Department's judgment that release would "jeopardize 'reciprocal confidentiality' and damage national security").  In comparison, plaintiff offers no meritorious argument, about the documents generally or

6

any specific document, to the contrary, nor is there any evidence suggesting bad faith on behalf of the defendant.  Therefore, the Court concludes that this information was properly withheld under Exemption 1.  *See Larson*, 565 F.3d at 864–65.

2.      **Exemption 4**

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  In this case, the State Department withheld in part or in full four documents pursuant to Exemption 4.

As an initial matter, GAP appears to argue that the withheld information is not commercial.  *See* Pl.'s Cross-Mot. 14–15 (stating that "the Foundation's operations have no logical connection to making a profit" and that "the Foundation is not engaged in any endeavor which could even conceivably connect to a commercial interest").  Our Circuit has found that "the terms 'commercial' and 'financial' in the exemption should be given their ordinary meanings" and that the commercial information provision is not confined to only those records that reveal "basic commercial operations."  *Pub. Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  The documents at issue here clearly fall within the ordinary meaning of "commercial."  One document was a report from U.S. Embassy Jordan on a discussion with FF officials about establishing a presence in the North Africa-Gulf region, including soliciting proposals

and making grants.[2]  *See* Houser-Jackson Decl. ¶ 123.  The other three documents were reports prepared by NEA/PI on FF meetings concerning staffing, remuneration, recruiting, and prospective grant projects.  *See id.*  Based on these descriptions, I am fully satisfied that the defendant has demonstrated FF's commercial interest in the information withheld under Exemption 4.

GAP primarily challenges whether the withheld documents were properly considered confidential.  Our Circuit has set forth a two-part test for determining confidentiality:

> [C]ommercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) (footnote omitted).  This test was later reaffirmed for situations when the information disclosed is "required" by the government.  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc).  However, "where, as here, the information sought is given to the Government voluntarily, it will be treated as

---

[2]     This document, N104, also contained email addresses of FF contacts, some of whom are private citizens.  That information was withheld under Exemption 6, discussed *infra*.  Houser-Jackson Decl. ¶ 123.  Upon further review, the State Department determined that five of those email addresses were public and released them.  Lauderdale Decl. ¶ 8.  The defendant continues to withhold two email addresses that appear to be personal.  *Id.*

confidential under Exemption 4 if it is of a kind that the provider would not customarily make available to the public." *Id.* This test provides a "categorical" rule to protect the Government's "continuing ability to secure such data on a cooperative basis" and avoid "injur[ing] the provider's interest in preventing its unauthorized release." *Id.* at 879.

Here, the State Department has shown that the information withheld under Exemption 4 was submitted voluntarily and "was provided with the expectation of confidentiality." Lauderdale Decl. ¶ 5.  In addition, the defendant has demonstrated that releasing the withheld information "would harm the competitive position of the FF vis-a-vis other foundations working in the same region and competing for similar, high-quality projects." Houser-Jackson Decl. ¶ 123.  This information concerning FF's internal deliberations is certainly not the type that would "'customarily' be made public." *Id.* ¶ 32; *see also id.* ¶ 123 ("The representatives no doubt believed that the conversation with U.S. Embassy staff would be treated as privileged. . . . The FF would not customarily make public their internal deliberations.").  Accordingly, the Court concludes that the undisclosed information was properly considered confidential and thus appropriately withheld pursuant to Exemption 4.

3.    **Exemption 5**

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  For a document to qualify

for this exemption, "it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Courts have incorporated civil discovery privileges into this exemption, such as attorney work product, attorney-client privilege, and what is called the "deliberative process" privilege. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–49 (1975); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).

The threshold issue under Exemption 5 is whether the withheld documents qualify as "inter-agency or intra-agency" memoranda. In addition to documents prepared within a government agency, the Supreme Court has implicitly recognized a consultant corollary that extends Exemption 5 to cover "records submitted by outside consultants" to government agencies when those consultants "played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done." *Klamath*, 532 U.S. at 10; *see also Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 512 F.3d 677, 681 (D.C. Cir. 2008) ("[D]ocuments such as the ones here—submitted by non-agency parties in response to an agency's request for advice—are covered by Exemption 5."); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 44 (D.D.C. 2007) ("[W]hen an agency solicits opinions from and recommendations by temporary, outside consultants, those materials are considered 'intra-agency' for FOIA purposes."). Here, GAP argues that two

10

documents, N5A and N33, are not "intra-agency" because they were created by a private

entity, the Eurasia Foundation, for another private entity, the FF, and not for the purpose

of aiding the State Department's deliberative process. *See* Pl.'s Cross-Mot. 23–24; Pl.'s

Reply 10–13. What plaintiff fails to recognize, however, is the clear consulting

relationship between the Eurasia Foundation and the State Department:

> In addition to providing funding to the FF, the Department of State contracted
> with the Eurasia Foundation (a non-profit organization supported by the U.S.
> Agency for International Development and public and private donors) to
> provide start-up support for the FF. During 2006 and 2007, the Eurasia
> Foundation (EF) was responsible for providing logistical support for FF
> meetings, drafting a business plan, bylaws and rules of procedure, drafting
> budgets and assisting with selection [of] the management team. The Office of
> Middle East Partnership Initiative in the Bureau of Near Eastern Affairs
> (NEA/PI) actively managed State Department's relationship with the Eurasia
> Foundation, attended early Foundation for the Future meetings and consulted
> closely with FF staff and management during the start up phase.

Houser-Jackson Decl. ¶ 22; *see also id.* ¶ 34 ("The withheld information includes pre-

decisional discussions among U.S. government employees as well as advice and

recommendations provided by officials of the Eurasia Foundation which was, at the time

the information was exchanged, under contract to the government for the purpose of

assisting in the organization and launching of the Foundation for the Future."). From this

description, it is obvious that the Eurasia Foundation acted as a consultant to the State

Department, and not in any adversarial capacity that would negate the consulting

relationship, and thus that the materials in question are appropriately considered "intra-

agency" for FOIA purposes. *See Citizens for Responsibility*, 514 F. Supp. 2d at 44. As a

result, the only question that remains for the documents withheld under Exemption 5 is

whether they fall within the civil discovery privileges incorporated into this exemption.

In this case, the defendant asserts both the deliberative process privilege and the attorney-

client privilege.

The deliberative process privilege exempts from FOIA disclosure those documents

that contain deliberations comprising part of a process by which governmental decisions

and policies are made. *See Klamath*, 532 U.S. at 8.  Advice, recommendations, and

opinions that are part of the decision-making process are protected from disclosure as

long as they are "predecisional." *See Sears*, 421 U.S. at 151–53.  The purpose of the

deliberative process privilege is to protect the decision-making process of government

agencies and to encourage "'the frank discussion of legal and policy issues' by ensuring

that agencies are not 'forced to operate in a fishbowl.'" *Mapother v. Dep't of Justice*, 3

F.3d 1533, 1537 (D.C. Cir. 1993) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839

F.2d 768, 773 (D.C. Cir. 1988) (en banc)).

In this case, the final decisions as to which the deliberative process applies

involved the organization and launching of the FF. *See* Houser-Jackson Decl. ¶ 34.  The

information withheld included the individuals being considered for the FF's board,[3] draft

---

[3]     The names and information of these individuals was also withheld pursuant to
Exemption 6, discussed *infra*.  Houser-Jackson Decl. ¶¶ 124–165.  Upon further review,
the State Department released the curriculum vitae of the successful applicants with
redactions made for purely personal information.  Lauderdale Decl. ¶ 7.

manuals of policies and procedures, and email exchanges concerning how the FF might

function. *See id.* ¶¶ 124–165, 166–174. It is apparent that these documents are pre-

decisional. Furthermore, the descriptions of these documents indicate that they contain

advice and recommendations that were an integral part of identifiable decisional

processes and were deliberative in nature. *See, e.g., id.* ¶ 174 (describing N5A as a draft

manual of policies and procedures for the FF's staff); *id.* (describing N128A as an email

exchange concerning possible language changes to the draft Memorandum of

Understanding between the State Department and the FF). Plaintiff's argument that the

defendant failed to produce a specific decision for any of the documents is unconvincing

in light of the specific decisions clearly at issue for each of the challenged documents. In

addition, I agree with defendant's assertion that disclosure of this information is likely to

interfere with the candor necessary for open and frank discussions on the defendant's

preferred course of action regarding the FF. *See Coastal States*, 617 F.2d at 866.

Accordingly, I uphold the defendant's classification of these documents as subject to the

deliberative process privilege and therefore exempt from disclosure under Exemption 5.

Because all of the information withheld pursuant to the attorney-client privilege was also

withheld pursuant to the deliberative process privilege, I do not need to consider the

propriety of the defendant's application of the attorney-client privilege. *See* Lauderdale

Decl. ¶ 6.

**4.     Exemption 6**

The final FOIA exemption relied on by the State Department is Exemption 6, which provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The terms "similar files" is construed broadly and is "'intended to cover detailed Government records on an individual which can be identified as applying to that individual.'"  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 89-1497 at 11 (1966)); *see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").  In this case, the State Department withheld the personal email addresses of several individuals, the names and curriculum vitae of individuals who were considered for the FF board but were ultimately not selected, and any purely personal information contained in the curriculum vitae of the successful applicants for the board.  *See* Houser-Jackson Decl. ¶¶ 123, 165, 177; Lauderdale Decl. ¶¶ 7–9.  Because those email addresses can be identified as applying to particular individuals, they qualify as "similar files" under Exemption 6, *see Wash. Post Co.*, 456 U.S. at 602, and, like the remaining documents described above and found to be properly withheld under Exemption 5, can be withheld as well.  How so?

Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency

14

action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372

(1976) (internal quotations marks and citation omitted). "In making that balance,

agencies and reviewing courts consider whether disclosure of the requested information

would result in an invasion of privacy, and if so, the extent and seriousness of that

invasion, as well as the extent to which disclosure would serve the public interest." *U.S.*

*Dep't of Def. Dep't of Military Affairs v. Fed. Labor Relations Auth.*, 964 F.2d 26, 29

(D.C. Cir. 1992). "[T]he only relevant public interest in the FOIA balancing analysis [is]

the extent to which disclosure of the information sought would 'she[d] light on an

agency's performance of its statutory duties' or otherwise let citizens know 'what their

government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *U.S. Dep't of Def. v. Fed.*

*Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original). Here, the

private individuals mentioned in these records have a clear privacy interest in avoiding

the disclosure of their personal email addresses. *See* Lauderdale Decl. ¶¶ 8–9.

Furthermore, releasing their email addresses serves no public interest because these email

addresses would not reveal "what the government is up to." To the contrary, release of

the excised addresses would constitute a clearly unwarranted invasion of privacy. Thus,

the State Department properly withheld this information under Exemption 6.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendant's motion for

summary judgment and DENIES the plaintiff's cross-motion for summary judgment. The

Court also DISMISSES the action in its entirety.  An order consistent with this decision

accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge